UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| BRYCE CHERRYHOLMES,<br>628 S. Hampton Dr.<br>Jacksonville, NC 28546,<br><br>and<br><br>KALYN CHERRYHOLMES,<br>628 S. Hampton Dr.<br>Jacksonville, NC 28546,<br><br>      **Plaintiffs,**<br><br>v.<br><br>**CENTERS FOR ADVANCED ORTHOPAEDICS, LLC**, doing business as **MID-MARYLAND MUSCULOSKELETAL INSTITUTE, A DIVISION OF CENTERS FOR ADVANCED ORTHOPAEDICS,**<br>Serve: Dennis Tritinger CPA, MBA<br>6707 Democracy Blvd<br>Ste 504<br>Bethesda, MD 20817<br><br>and<br><br>**JOCELYN IDEMA, M.D.,**<br>105 Whispering Heights Lane<br>Venetia, Pennsylvania 15367<br><br>and<br><br>**THOMAS MONKO**<br>105 Whispering Heights Lane<br>Venetia, Pennsylvania 15367<br><br>      **Defendants.** | **Civil Action No.** |

## COMPLAINT
(Medical Negligence, Diversity of Citizenship)

## Jurisdiction

1. The plaintiffs Bryce Cherryholmes and his wife Kalyn Cherryholmes are citizens of North Carolina.

2. The defendant Centers for Advanced Orthopaedics LLC is a corporation organized in Maryland and with its principal place of business in Maryland.

3. The defendants Jocelyn Idema, M.D., and Thomas Monko, on information and belief, are citizens of Pennsylvania.

4. This Court has jurisdiction over this case based on diversity of citizenship, 28 U.S.C. § 1332(a)(1), in that both of the plaintiffs are citizens of a state different from the citizenship of all the defendants, and the amount in controversy exceeds $75,000, not counting interest and costs.

5. Venue is appropriate because the events at issue occurred in Frederick and Baltimore, Maryland.

## Facts Common to All Counts

6. This case arises from injuries suffered by Bryce Cherryholmes as a result of the negligence of the Defendants Jocelyn Idema, M.D., Thomas Monko, and their employer Centers for Advanced Orthopaedics LLC, doing business as Mid-Maryland Musculoskeletal Institute, a Division of Centers for Advanced Orthopaedics (MMI). The Defendants' negligence caused Mr. Cherryholmes to a become a wheelchair-dependent paraplegic, with no feeling or sensation below his chest, following a spinal cord stimulator (SCS) implantation performed by Dr. Idema on October 25, 2016, at the Monocacy Surgery Center in Frederick, Maryland.

7. On October 19, 2018, the plaintiffs filed a claim in the Maryland Health Claims Alternative Dispute Resolution Office against the defendant health care providers for medical injury within the meaning of Md. Code Cts. & Jud. Proc. § 3-2A-01, and thereafter they waived arbitration pursuant to Md. Code Cts. & Jud. Proc. § 3-2A-06B(b)(1).

8. Bryce Cherryholmes was born on April 8, 1988. He lives at 628 S. Hampton Dr., Jacksonville, NC 28546, with his wife, Kalyn Cherryholmes. Mr. and Mrs. Cherryholmes have been married since November 26, 2009.

9. Centers for Advanced Orthopaedics, LLC, doing business as Mid-Maryland Musculoskeletal Institute, a Division of Centers for Advanced Orthopaedics ("MMI"), is a Maryland corporation with its principal place of business located at 6707 Democracy Blvd., Suite 504, Bethesda, Maryland. MMI was Dr. Idema and Mr. Monko's employer at all relevant times during their care and treatment of Mr. Cherryholmes.

10. Jocelyn Idema, M.D., is a physician residing at 105 Whispering Heights Lane, Venetia, Pennsylvania 15367.

11. Thomas Monko is a physician's assistant residing at 105 Whispering Heights Lane, Venetia, Pennsylvania 15367. He is married to Dr. Idema.

12. Bryce Cherryholmes joined the United States Marine Corps in 2007, and was stationed in Iraq in 2009 when he suffered a back injury after falling off a trailer.

13. In 2014, Mr. Cherryholmes had fusion surgery on his lumbar spine at a U.S. Navy hospital in San Diego, and subsequently developed failed back syndrome with severe and chronic lower back pain.

14. Mr. Cherryholmes eventually came to use a cane and developed some leg numbness, but prior to his surgery with Dr. Idema in October 2016, he had full strength in both legs and normal bladder control and bowel function.

15. In 2015, Mr. Cherryholmes became aware that a spinal cord stimulator might provide him with some relief of his back pain. He was unable to get approval from the Department of Veterans Affairs (VA) for implantation of an SCS. However, Mr. Cherryholmes became aware that an organization called the Back to Life Campaign, which attempted to assist veterans suffering from chronic back pain, might be able to help him obtain an SCS implant.

16. In February 2016, Mr. Cherryholmes spoke with Thomas Monko, the founder and president of the Back to Life Campaign. Mr. Monko told Mr. Cherryholmes that the Back to Life Campaign would be able to arrange for an SCS implant, at no charge to Mr. Cherryholmes.

17. Mr. Monko informed Mr. Cherryholmes that the surgeon who would be implanting the spinal cord stimulator was Dr. Jocelyn Idema, an employee of MMI, where Mr. Monko was also a physician's assistant. Mr. Monko did not tell Mr. Cherryholmes that he was an employee of MMI. Nor did he tell Mr. Cherryholmes that Dr. Idema was his wife. The surgery was set to take place in late October 2016, at the Monocacy Surgery Center in Frederick, Maryland.

18. Mr. Cherryholmes was given a "media" consent form to sign that gave permission for MMI to use his name and medical information in press releases and other advertisements. A company hired by Mr. Monko videotaped parts of the surgery, with plans to use the footage for promotional purposes.

19. Mr. Cherryholmes traveled from his home in Iowa to Maryland for the procedure by Dr. Idema, and on October 24, 2016, Dr. Idema implanted a temporary SCS into Mr. Cherryholmes. However, she did not document anything about this trial implantation until the next day. According to Dr. Idema's operative report from October 25, Mr. Cherryholmes had a good response to the trial SCS on the 24th, and he agreed to go ahead with the permanent implant the next day.

20. At the time of the surgery, Mr. Cherryholmes was taking indomethacin, a non-steroidal anti-inflammatory drug (NSAID) that is known to be a platelet inhibitor, and therefore has the potential to contribute to internal bleeding because of its anti-clotting properties.

21. Because indomethacin is a known platelet inhibitor, patients undergoing certain types of surgery are usually asked to discontinue the drug for several days beforehand so their body can return to a normal clotting status.

22. On October 25, 2016, Dr. Idema cut two windows in the T9 spine in Mr. Cherryholmes' mid-back (laminectomy) and implanted a thoracic paddle SCS outside the dura (the membrane surrounding the spinal cord) from levels T8 to T10.

23. Recovering in the PACU, Mr. Cherryholmes began to feel strong pinching in the back, for which he was given Dilaudid. He also reported numbness in his mid-back, near where the SCS was implanted.

24. Mr. Cherryholmes was discharged from the surgery center at 3:45 p.m., walking under his own power. Mr. Monko took him to his hotel room.

25. At 4:25 p.m., according to the PACU records, Mr. Monko "called stimulator staff after they left hospital; needed verification that sensations pt was experiencing were normal. Boston Scientific rep. stated sensations will get less as body heals."

5

26. According to the Maryland State Police air transport unit records, Mr. Cherryholmes "reported he began having decreased mobility and feeling in his lower extremities starting at 1600 hours. Soon thereafter the patient reported that he could not urinate and had complete lack of sensation and motor function in both lower extremities."

27. For approximately one hour from when Mr. Cherryholmes first reported the onset of loss of sensation and strength in his legs, Mr. Monko, who was present in his hotel room, and a Boston Scientific representative named Kirk McMullen, whom Mr. Monko consulted by cellphone, reassured Mr. Cherryholmes that his symptoms were likely just a response to his pain medications or the SCS, and were nothing to be concerned about.

28. Finally, at approximately 5 p.m., Mr. Monko called 911. EMS units responded and, in a report timed 5:20 p.m., Mr. Cherryholmes indicated that he had no feeling or motor control from his umbilicus down. The same report stated that "the physician who performed the procedure" –Dr. Idema – "performed an assessment and states that she believes he is bleeding internally from the procedure."

29. Mr. Cherryholmes recalls that after Dr. Idema arrived at his hotel room and checked his rectal tone, she became very concerned and said he needed to go to a hospital in Frederick or Baltimore right away for immediate surgery. The EMTs consulted with the University of Maryland (UM) Shock Trauma, which agreed to accept Mr. Cherryholmes.

30. A helicopter ambulance took Mr. Cherryholmes from Frederick Municipal Airport to UM Shock Trauma, where he arrived at 6:27 p.m. There he was found to have no sensation from T8 down, and he believed the level of loss of sensation was moving upwards.

31. Mr. Cherryholmes underwent an emergency CT myelogram at UM Shock Trauma, which found "dorsal epidural hematoma extending from T1 through L1 causing effacement of

6

the CSF at multiple levels with severe canal stenosis and significant flattening of the cord due to mass effect at T7-T9."

32. Dr. Steven Ludwig, an orthopedic spine surgeon at UM Shock Trauma, performed emergency surgery, starting at 10:49 p.m., to relieve the hematoma pressing on the spinal cord. His operative report described finding "massive currant jelly epidural hematoma with large effacement of the spinal cord, T6 through T10." Dr. Ludwig removed the SCS device, performed laminectomies on both sides of the spine from levels T6 through T10, and evacuated the hematoma.

33. Mr. Cherryholmes is now diagnosed as a complete T3 AIS A paraplegic with neurogenic bowel and bladder. He is wheelchair dependent and lacks sensation below his chest.

34. MMI, as Dr. Idema and Mr. Monko's employer at all relevant times while Mr. Cherryholmes was under their care, is vicariously liable for the negligence and violation of informed consent by its employees.

## Count One: Negligence (Dr. Idema)

35. Dr. Idema negligently caused Mr. Cherryholmes to suffer paraplegia and related injuries, by violating the standard of care in the following ways:

   A. Dr. Idema negligently implanted the permanent SCS only one day after the trial SCS. The standard of care is to have an SCS trial lasting at least three days and as long as a week or two, to determine whether the SCS is truly improving a patient's pain symptoms. The standard of care also calls for the surgeon to let the spine rest for several days between removal of the trial SCS and insertion of the permanent SCS.

B. Dr. Idema should not have performed the SCS implantation while Mr. Cherryholmes was on indomethacin. There were many other available NSAIDs that are not known to inhibit platelet function, and clotting. The standard of care required Dr. Idema to wait for Mr. Cherryholmes to be off indomethacin for at least one week prior to surgery.

C. Dr. Idema negligently failed to perform emergency surgery on Mr. Cherryholmes once she found him to have abnormal rectal tone and an inability to move his legs, both strong signs that he was suffering from a spinal hematoma. Dr. Idema knew where this hematoma was likely to be -- unlike the physicians at UM, who needed to do a CT myelogram to make this discovery, since Dr. Idema apparently did not communicate with them at all before their late-night surgery. Dr. Idema could have operated on Mr. Cherryholmes and relieved the hematoma hours before he ultimately was operated on at UM Shock Trauma.

### Count Two: Negligence (Mr. Monko)

36. Mr. Monko negligently caused Mr. Cherryholmes to suffer a permanent spinal cord injury, paraplegia, and related injuries, and violated the standard of care in the following ways:

    A. Mr. Monko negligently failed to properly represent his role by blurring the lines between being a non-medical layperson representing a non-profit corporation and being a health care provider offering medical care, advice, and treatment for Mr. Cherryholmes.

    B. Mr. Monko improperly assumed and took on the role of a medical provider for

8

        Mr. Cherryholmes both before and after the SCS surgical procedure. He undertook to advise the patient pre-operatively regarding medications to discontinue before the procedure, but negligently failed to have knowledge of or warn Mr. Cherryholmes to stop taking his Indomethacin, a NSAID known to inhibit platelet aggregation and increased incidence of postoperative bleeding.

C.     Mr. Monko negligently failed to call for emergency help for approximately one hour after Mr. Cherryholmes's symptoms of spinal cord compression started.

## Count Three: Violation of Informed Consent (Dr. Idema)

37. Dr. Idema failed to obtain Mr. Cherryholmes's informed consent for the SCS procedure, and the care related to that procedure, by failing to disclose what a reasonable patient would have wanted to know in this situation, including her spousal and professional relationship with Mr. Monko, and the marketing interest that she had in providing "charity" care.

38. Dr. Idema's failure to obtain Mr. Cherryholmes's informed consent resulted in him proceeding with the SCS procedure, with Dr. Idema as his pre and post-op treating physician, and caused him to suffer a permanent spinal cord injury, paraplegia, and related injuries.

## Count Four: Violation of Informed Consent (Mr. Monko)

39. Mr. Monko failed to obtain Mr. Cherryholmes's informed consent for the SCS procedure and the care related to that procedure, by failing to disclose what a reasonable patient would have wanted to know in this situation, including his spousal and professional

relationship with Dr. Idema and the marketing interest that he had in providing "charity" care.

40. Mr. Monko's failure to obtain Mr. Cherryholmes's informed consent resulted in him proceeding with the SCS procedure, with Mr. Monko as his pre and post-op treating physician's assistant, and caused him to suffer a permanent spinal cord injury, paraplegia, and related injuries.

## **Damages**

41. As a result of the defendants' negligence, Mr. Cherryholmes has suffered severe and permanent injuries. Mr. Cherryholmes claims all damages available under the law for his injuries, including:

    A. The impact his injuries have had, and will continue to have, on his overall physical and mental well-being;

    B. The physical and emotional pain that he has suffered, and will continue to suffer, as a result of his injuries;

    C. The disfigurement and embarrassment that he has suffered as a result of his injuries;

    D. The medical expenses and other costs associated with his care that he has incurred, and will continue to incur, as a result of his injuries;

    E. The loss of earnings and earning capacity that he has incurred as a result of his injuries.

42. Kalyn Cherryholmes has suffered a loss of consortium as a result of her husband's injuries.

43. The plaintiffs demand judgment against the defendants, jointly and severally, in an amount in excess of $75,000, the required jurisdictional amount for the United States

District Court, District of Maryland.

Respectfully submitted,

_____

Patrick A. Malone, Esq.
Daniel C. Scialpi, Esq.
Patrick Malone & Associates, P.C.
1310 L Street, NW
Suite 800
Washington, DC 20005
Phone: (202) 742-1500
Facsimile: (202) 742-1515
pmalone@patrickmalonelaw.com

Mark E. Spellman (Of Counsel)
Spellman Law Firm
1024 Second St
PO Box 550
Perry, Iowa 50220
515.465.5326 phone
515.465.3193 fax
mark@spellmanlawfirm.com

*Attorneys for the Plaintiffs*

## JURY DEMAND

The plaintiffs demand trial by jury.

_____

Patrick A. Malone, Esq.